**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 21 2014, 6:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NOAH T. WILLIAMS**
Monroe Co. Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LOREN MACK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1403-CR-118 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Mary Ellen Diekhoff, Judge
Cause Nos. 53C05-1112-FC-1181, 53C05-1306-FC-635, 53C05-1203-FC-234

**October 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Loren Mack appeals his sentence for four counts of fraud on a financial institution as class C felonies. Mack raises one issue, which we revise and restate as:

I.      Whether the trial court abused its discretion in sentencing him; and

II.     Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

FACTS AND PROCEDURAL HISTORY

On November 1, 2011, Mack knowingly presented a bad check to Indiana University Credit Union in order to defraud Indiana University Credit Union and received money as a result. On November 7, 2011, Mack knowingly presented a bad check to Key Bank in order to defraud Key Bank and received money as a result. On February 1, 2012, Mack knowingly presented a bad check to Old National Bank in order to defraud Old National Bank and received money as a result. Between June 22 and 26, 2013, Mack knowingly presented a bad check to Indiana University Credit Union in order to defraud Indiana University Credit Union and again received money as a result.

On December 8, 2011, the State charged Mack under cause number 53C05-1112-FC-1181 ("Cause No. 1181") with fraud on a financial institution as a class C felony for presenting the bad check on November 7, 2011, and violation or failure of carrier's duty to warn as a class D felony alleging he failed to warn his sexual partner, C.W., that he was a carrier of HIV. On March 15, 2012, the State charged Mack under cause number 53C05-1203-FC-234 ("Cause No. 234") with two counts of fraud on a financial institution as class C felonies for presenting the bad checks on November 1, 2011, and

2

February 1, 2012, and thirteen counts of check fraud as class D felonies alleging that Mack delivered bad checks to Schwan Food, Bloomington Hospital, Federal Express, IU Bookstore, Classic Lanes, T&T Petfood, Williams Bros. Pharmacy, Hobby Lobby, TIS Bookstore, True Value Hardware Bloomington, Curry Buick, IGA, and True Value Hardware Ellettsville. On June 28, 2013, the State charged Mack under cause number 53C05-1306-FC-635 ("Cause No. 635") with fraud on a financial institution as a class C felony for presenting the bad check between June 22 and 26, 2013, and false informing as a class A misdemeanor alleging that Mack gave a false report that he had been robbed.

The State and Mack signed a pretrial order dated October 29, 2013, which indicates that the State offered that Mack plead guilty to four counts of fraud on a financial institution, the sentence would be ten years, the portion of the sentence suspended would be left to the discretion of the court, and that Mack accepted the State's plea and sentencing offer. The same day, the court held a change of plea hearing at which Mack pled guilty to fraud on a financial institution as a class C felony under Cause No. 1181, to two counts of fraud on a financial institution as a class C felonies under Cause No. 234, and to fraud on a financial institution as a class C felony under Cause No. 635, all pursuant to the agreement.

On February 14, 2014, the court held a sentencing hearing. Mack's counsel stated that he had read most of the PSI to Mack because Mack had trouble reading and that they did not have any corrections to the PSI. S.W., the mother of C.W., testified that C.W. met Mack when he was seventeen years old and vulnerable, and that Mack lied about his income and education and made up a son that did not exist to pretend to be a good father.

3

She testified that C.W. almost lost his position at Indiana University because he was so distracted from his studies. S.W. also testified that Mack claimed that C.W. had molested C.W.'s brother who is autistic, and that Mack routinely lied about his HIV status and because of that lie C.W. was exposed to a potential death sentence. C.W. testified that Mack took advantage of him at a young age, as his mother had stated, and that if Mack was released he would continue to prey on innocent victims and take advantage of people. Mack testified that he was dealing with HIV, cancer, and bad vision, that he was scheduled to have another eye surgery in April, and that he was supposed to have prostate surgery due to cancer. He testified his physical health deteriorated while he was incarcerated, that he has "degenerative retina," and is "totally blind in [his] left eye . . . [and] can see about twenty-five / thirty percent in [his] right eye." Transcript at 29. Mack indicated he had been diagnosed with bipolar disorder for which he takes medication, and that his landlord had offered him a job. When asked to explain how he planned to pay restitution, Mack testified that he would pay restitution with "the money that [he] would be making working for [his landlord] and then [his] disability that [he received] every month plus [his] father ha[d] died recently." Id. at 31. Mack testified that his father left him and two of his siblings a life insurance policy and stock in General Motors. He further testified that he had made a budget, that it would take sixty to ninety days to receive the insurance money, and that "once [he received] that [he] can pay the restitution off in full and still have . . . more than enough money left over to pay for the home detention and everything." Id. at 32. The State requested that the court order Mack to serve the entire ten-year sentence executed in the Department of Correction.

4

Mack's counsel noted that he did not plead guilty to the failure to warn charge and was not being sentenced on that count. He argued that Mack's offenses were in some small degree facilitated by his bipolar disorder, and that the presentence investigation report ("PSI") is "pretty friendly compared to what [he] usually [saw] in a felony case like this." Id. at 37. His counsel then noted, "[a]s far as mitigators go," Mack pled guilty, avoiding a complex trial. Id. He noted that Mack does have an extensive criminal history, that it was unclear whether the 1997 conviction in the PSI was a felony, and that, if it was, it had been close to fifteen years since Mack was convicted of a felony. Counsel also stated that Mack had some serious health issues, that he needed some time on probation or home detention to be able to work to pay his restitution, and counsel asked that any executed time be served on home detention.

The court entered judgment on the counts to which Mack pled guilty, dismissed the remaining counts, and accepted the agreement of the parties. The court noted Mack's criminal history beginning in 1987 including felony convictions for thefts, fraud, and passing bad checks. The court also noted that other counts under all three of the present causes were dismissed by the State which it viewed as a benefit to Mack. The court found:

> Mr. Mack, you haven't been truthful with this Court all the way through. You haven't been truthful in your dealings with people. You haven't been truthful in just about anywhere. Being truthful for you is a problem. Do you have health problems? I'm sure you do. Do you have other mental problems? Perhaps, but instead of addressing any of those things . . . , the Court let you out of jail the last time so that you would address these medical issues because you were writing to the Court and your attorney came through and was making arguments for you and instead of addressing those, we get a new criminal offense. That would be the problem.

Whenever you're out there instead of addressing what you need to be addressing you're committing new criminal offenses over and over and over and over and over again. Defrauding people is what you do. Lying to people is what you do. Not being honest is what you do, it's what you do and you can't stop or you won't stop and you don't stop and here we are. While you've been incarcerated as I just said, the Court we needed to address your medical issues, allowed you the opportunity to do that, you didn't address your medical issues and even if you did Mr. Mack, you still committed a new criminal offense.

Id. at 41-42.

The court sentenced Mack to two years for his conviction under Cause No. 1181, two years for each of his two convictions under Cause No. 234 to be served concurrently with each other, and six years for his conviction under Cause No. 635, and ordered the sentences under each of the cause numbers to be served consecutive to each other for an aggregate sentence of ten years executed in the Department of Correction. The court also ordered Mack to make restitution under each of the cause numbers.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion in sentencing Mack. We review Mack's argument that the trial court improperly considered mitigators for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding

of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Id. at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id.

Mack argues that his conduct may have been partly the result of his bipolar disorder and other mental issues and that he has been diagnosed with post-traumatic stress disorder and attention deficit disorder. He contends that he suffers from numerous serious illnesses which may deteriorate during incarceration and that he suffers from HIV, prostate cancer, and a degenerative retina. Mack also argues that the fact he accepted responsibility for his crimes should carry mitigating weight and that he expressed a plan to pay restitution. The State maintains it was not unreasonable for the court to conclude Mack's health issues were overblown as he is dishonest, and his verbalized remorse should be taken with a grain of salt given that he continued to commit the same type of crimes.

The determination of mitigating circumstances is within the discretion of the trial court. Rogers v. State, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), trans. denied. The trial court is not obligated to accept the defendant's argument as to what constitutes a

7

mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. Id.

At sentencing, Mack testified that he had been diagnosed with bipolar disorder, that he has a degenerative retina, is blind in one eye and can see about twenty-five to thirty percent in the other eye, and that he has HIV and prostate cancer. The trial court found that Mack had the opportunity to address or seek treatment for his conditions but failed to do so. Specifically, the court found that it had "let [Mack] out of jail the last time so that [he] would address these medical issues . . . and instead of addressing those, we get a new criminal offense." Transcript at 41. Further, Mack indicated that, once he received life insurance proceeds due to the death of his father, he would have more than enough money to pay restitution in full and for home detention.[1]

Mack does not point to the sentencing transcript in support of his argument that he has shown remorse. The PSI states that Mack reported that he concerned about others, is sorry for his actions, and would like the opportunity to make amends. The court was not required to give the same weight to the factors of Mack's physical and medical conditions or his alleged remorse as Mack desired. See Rogers, 878 N.E.2d at 272; see also Anglemyer, 868 N.E.2d at 491. We cannot say the trial court abused its discretion.

## II.

The next issue is whether Mack's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we

---

[1] The PSI, under the section for family information, states that Mack reported that "he has had no contact with his father for sometime and assumes the elder man is still living and residing in Illinois." Appellant's Appendix at 41.

"may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Mack contends that his character and physical and mental health issues merit a lesser sentence. He asserts the offenses occurred when he lost his insurance and could not afford his medication for bipolar disorder, that he has been diagnosed with post-traumatic stress disorder and attention deficit disorder, and that he suffers from HIV, prostate cancer, and a degenerative retina. He argues that, although a number of his charges were dismissed, those dismissals do not completely take away the benefit that he conferred on the State by pleading guilty and that he saved the court resources and the trouble of a fairly complex full-blown trial. He asserts he expressed a plan to pay restitution, that he had employment lined up if he was placed on home detention, and that, although he has an extensive criminal history similar to that of his instant offenses, he lived a number of years without being convicted of a felony. He also argues that the Indiana Risk Assessment System ("IRAS") tool in the PSI shows "five (5) moderates and two (2) lows and no highs." Appellant's Brief at 8.

The State notes that Mack does not present an argument related to the nature of the offenses, and argues that Mack's sentence is especially not inappropriate considering his criminal history consisting of these exact types of crimes and that Mack has at least twelve prior convictions for writing bad checks or check deception. The State further

9

argues that Mack's intricate schemes show he is high-functioning and that his physical illnesses do not require constant medical attention so as to make incarceration inappropriate.

Our review of the nature of the offense reveals that, between November 1, 2011, and June 26, 2013, Mack knowingly presented bad checks in order to defraud Indiana University Credit Union, Key Bank, and Old National Bank. Our review of the character of the offender reveals that Mack pled guilty and, pursuant to an agreement, a number of other charges against him were dismissed. The PSI reveals that Mack's criminal history includes convictions for theft as a felony in 1987, several counts for presenting bad checks as misdemeanors in 1990, two counts of theft as felonies in 1991, deceptive practices as a felony in 1995, presenting a bad check in 1997, fraud as a misdemeanor in 2003, check deception as a misdemeanor in 2004, and check deception as a misdemeanor in 2012. Mack was found to have violated the terms of previous placements on probation in 1994 and 2001. Mack testified he has been diagnosed with a degenerative retina, HIV, prostate cancer, and bipolar disorder. The PSI indicates Mack reported that he had also been previously diagnosed with post-traumatic stress disorder and attention deficit disorder. The PSI states that Mack reported that he smokes marijuana, that he did so to improve his appetite, and that he does not believe his marijuana use is a problem. The IRAS tool in the PSI shows that Mack's overall score placed him in the moderate risk to reoffend category.

After due consideration of the trial court's decision, we cannot say that Mack has met his burden of showing that the aggregate sentence imposed by the trial court for his

four convictions for fraud on a financial institution as class C felonies under Cause Nos. 1181, 234, and 635 is inappropriate in light of the nature of the offense and the character of the offender.

## CONCLUSION

For the foregoing reasons, we affirm Mack's sentence.

Affirmed.

BARNES, J., and BRADFORD, J., concur.